United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

MACKENZIE FOTSCH,

Plaintiff,

v.

MATTHEW SHRODER,

Defendant.

Case No. 26-cv-04505-LB

**ORDER GRANTING IN PART MOTION TO STRIKE**

Re: ECF No. 17

**INTRODUCTION**

This is a dispute between plaintiff Mackenzie Fotsch and defendant Matthew Shroder, who were in a romantic relationship until they broke up in November 2025. In February 2025, before their relationship ended, Shroder bought a house in Sausalito for $2.2M, which is titled only in his name. Fotsch alleges that that the parties orally agreed to pool their resources and share ownership of the house: seventy-five percent to Shroder (who funded the all-cash purchase) and twenty-five percent to Fotsch, to be earned through payments towards improvements and property taxes and through her services managing the property. The parties lived together at the house (though Shroder maintained his residence in Nevada). They worked with counsel to memorialize their oral agreement, but when their relationship ended, Shroder moved out, Fotsch stayed, and the parties' negotiations broke down. Shroder sued Fotsch in Marin County Superior Court in March 2026 for unlawful detainer. Three weeks later, Fotsch sued Shroder, also in Marin County, claiming contract, tort, and equitable

United States District Court
Northern District of California

claims.[1] Shroder removed the case to federal court, asserting diversity jurisdiction.[2] He then moved under California's Strategic Lawsuits Against Public Participation (SLAPP) law, Cal. Civ. Proc. Code § 425.16, to strike six claims in the complaint: (1) breach of pooling agreement (claim one); (2) breach of express oral contract (claim two), (3) breach of implied contract (claim three); (4) unjust enrichment (claim six); (5) breach of fiduciary duty (claim seven), and (6) conversion (claim eleven). For all claims but claim six for unjust enrichment, he asserts that the claims are predicated on the unlawful-detainer action and barred by California Civil Code § 47(b)'s absolute litigation privilege. He contends that claim six for unjust enrichment fails because California does not recognize unjust enrichment as a standalone claim.[3]

The motion is granted in part. The complaint pleads the filing and service of the unlawful-detainer action as conduct that breached the parties' agreements, breached Shroder's fiduciary duties, and converted Fotsch's property. These discrete allegations arise from protected activity, and the litigation privilege bars them as a matter of law. The court strikes them from claims one, two, three, seven, and eleven without leave to amend because the privilege is absolute and repleading them would be futile. The claims are also predicated on conduct that is not protected petitioning: the alleged pre-suit repudiation of the parties' agreements, the refusal to recognize Fotsch's claimed ownership interest, her exclusion from the property's ownership and management, and the refusal to account for her share. The motion does not address the sufficiency of these grounds to support the claims, which remain in the case and are unaffected by this order. The complaint's references to the unlawful-detainer action may remain as background and evidence, just not as a basis for liability.

[1] Compl. – ECF No. 1 at 8–17 (¶¶ 7–8, 10–19, 21, 23–29, 33–34). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Notice of Removal – ECF No. 1 at 1–3.

[3] Mot. – ECF No. 17-1 at 7–9, 21.

The motion to dismiss claim six for unjust enrichment is denied. Shroder identifies no protected activity under SLAPP, and the claim otherwise is cognizable as a quasi-contract claim seeking restitution.

## STATEMENT

### 1. The Relationship, the Property, and the Agreement

The parties began dating in October 2018, and the relationship became serious. In 2022, Shroder relocated to Incline Village, Nevada, but stayed at Fotsch's San Francisco residence nearly half the year. From 2022 to early 2025, the parties cohabited at each other's residences and pooled and shared living expenses. In 2025, they discussed marriage and starting a family, and they decided to buy a home together.[4] Fotsch alleges a "pooling agreement," whereby the parties would live together in the house, Shroder would fund the purchase price and hold a seventy-five-percent ownership interest, and Fotsch would have a twenty-five percent ownership interest by "contributing 25% of the initial purchase price . . . through payment of capital improvements and payment of real-property taxes after the purchase of the property." Improvements and repairs beyond Fotsch's "initial buy in" would be split on a pro rata basis based on their respective ownership interests. They would split costs for utilities and household supplies. Fotsch would manage the property and its improvements due to Shroder's frequent travel. Profits and losses (including rents, income, and gains/losses) would be split pro rata based on their ownership shares.[5]

The parties bought the house at 83 Princess Street in Sausalito, California, on February 21, 2025, for $2,217,827.88 in an all-cash purchase. The deed was recorded solely in Shroder's name.[6] Fotsch alleges that the rapid closing left no time to form the jointly owned entity that was to take title, her funds were tied up in stock that could not be liquidated, and the parties agreed to transfer title to a joint entity later.[7] The parties moved into the property together. Fotsch served as project manager/developer for the property, managed an SB 330 development application

---

[4] Compl. – ECF No. 1 at 8–10 (¶¶ 7–13).

[5] *Id.* at 10–11 (¶ 14), 14 (¶ 26), 18–19 (¶ 38), 21 (¶ 48).

[6] *Id.* (¶¶ 14–15).

[7] *Id.* at 11–12 (¶¶ 15–16).

(submitted in May 2025 in Shroder's name after advice that a title transfer might jeopardize it), and contributed $142,555.23 to her twenty-five percent buy-in of $554,456.97 (tracked in a shared spreadsheet).[8] In 2025, the parties worked with counsel to form the corporate entity, as they agreed in February 2025.[9] For example, on March 21, 2025, their counsel circulated a draft co-ownership agreement that reflected Fotsch's twenty-five percent interest.[10]

### 2. The Breach and the Lawsuits

Shroder ended the relationship on November 6, 2025, and moved out of the Sausalito house. Fotsch remained at the property and transferred the utilities to her name.[11] The parties continued their negotiations to document their agreement, but on January 20, 2026, Shroder repudiated the agreement by proposing new terms that were more favorable to him.[12] In February 2026, Shroder offered to buy out Fotsch's interest. She declined. On February 24, 2026, through counsel, Shroder told Fotsch that her license to remain at the house was terminated and demanded that she vacate the property. On March 2, 2026, he filed an unlawful-detainer action in Marin Superior Court, serving Fotsch on March 13. The unlawful-detainer action remains pending, and Fotsch moved to stay it in favor of this action, which she filed on March 23, 2026, also in Marin County.[13]

The complaint in the federal case has fourteen claims. The claims relevant to the motion are as follows: (1) breach of the pooling agreement to treat the property as joint property, subject to the seventy-five/twenty-five ownership split, under *Marvin v. Marvin* (claim one); (2) breach of the parties' express oral contract based on that agreement (claim two); (3) breach of implied contract

---

[8] *Id.* at 11–14 (¶¶ 15–16, 19–22).

[9] *Id.* at 14 (¶¶ 23, 26).

[10] *Id.* at 14–16 (¶¶ 26–27); Draft, Ex. 2 to *id.* at 47–48.

[11] Compl. – ECF No. 1 at 14 (¶¶ 24–25)

[12] *Id.* at 15–17 (¶¶ 27, 33).

[13] *Id.* at 16–17 (¶¶ 28–29, 34); Notice of Pendency of Other Action – ECF No. 15. The unlawful-detainer action is *Shroder v. Fotsch*, No. CV0009295 (Marin County Super. Ct). Compl., Ex. A, Request for Judicial Notice – ECF No. 17-2 at 4. The court judicially notices the public-record complaint and a court order in that proceeding, but not disputed facts in them. Fed. R. Evid. 201; *Lee v. City of Los Angeles*, 250 F.3d 668, 688–90 (9th Cir. 2001).

United States District Court
Northern District of California

(claim three); (4) unjust enrichment (claim six); (5) breach of fiduciary duty (claim seven); and (6) conversion (claim eleven).[14] On May 14, 2026, the defendant removed the case to federal court based on diversity jurisdiction.[15]

**3. The Motion and Relevant Procedural History**

Shroder moves to strike the following allegations as protected petitioning activity that cannot serve as the predicates for claims one through three, seven, and eleven.[16]

The complaint's general allegations state that Shroder "filed an unlawful-detainer action in Marin County Superior Court, despite Mackenzie's ownership interest in the property" (¶ 29) and "[o]n March 13, 1026, Matthew served Mackenzie with an unlawful-detainer complaint" (¶ 34) (all claims).[17]

Claim one (for breach of pooling agreement) alleges that "Matthew breached the Agreement by refusing and preventing Mackenzie from exercising her rights consistent with their ownership of the Princess St. Property when he served her with a Summons and Complaint for unlawful detainer" (¶ 45) (claims one through three, seven, and eleven).[18]

Claim two (for breach of express oral contract) alleges that "Matthew breached the above agreements, and the duties inherent in such agreements, by his conduct, including but not limited

---

[14] The other claims are promissory estoppel (claim four), quantum meruit (claim five), fraud (claim eight), constructive fraud (claim nine), constructive trust and accounting (claim ten), quiet title (claim twelve), partition (claim thirteen), and declaratory relief (claim fourteen). Compl. – ECF No. 1 at 17–38 (¶¶ 35–142).

[15] Notice of Removal – ECF No. 1 (parties are diverse and the amount in controversy exceeds $75,000).

[16] Mot. – ECF No. 17-1 at 12–14 (identifying allegations); Reply – ECF No. 24 at 7 & n.1 (allegations and claims predicated on those allegations are stricken, though allegations may remain for whatever collateral purpose they otherwise serve). Each claim incorporates the general allegations and fact allegations from preceding claims, *see, e.g.*, Compl. – ECF No. 1 at 20 (¶ 47), which means that the challenged allegations are predicates for claims that follow the allegations. The claims affected by each allegation are identified in parentheticals in the accompanying text.

[17] Compl. – ECF No. 1 at 16–17 (¶¶ 29, 34).

[18] *Id.* at 20 (¶ 45).

United States District Court
Northern District of California

to, denying and repudiating the aforementioned agreements by serving Mackenzie with an unlawful detainer Summons and Complaint" (¶ 54) (claims two, three, seven, and eleven).[19]

Claim three (breach of implied contract) alleges that "[i]t specifically became clear that Matthew did not intend to honor the Parties' Pooling Agreement when [he] served Mackenzie with an unlawful detainer action concerning the Princess St. Property on March 13, 2026. He specifically denied and repudiated such agreements by his conduct" (¶ 66) (claims three, seven, and eleven).[20]

Claim seven (breach of fiduciary duty) enumerates five breaches of fiduciary duty by Shroder, including "[t]reating the Parties' joint property as his sole and separate property and refusing and preventing Mackenzie from exercising her rights consistent with her 25% ownership interest in such property" and "[r]efusing to allow Mackenzie to exercise management rights over the Princess St. Property" (¶ 87(d)–(e)) (claim seven and eleven).[21]

Count eleven (conversion) alleges that Shroder converted Fotsch's property "by his service of a Summons and Complaint for unlawful detainer on March 13, 2026, and through this exercise of affirmative control over the aforementioned real property, to the exclusion of Mackenzie, and by denying [her] reasonable requests to account for said funds and property" (¶ 120) (claim eleven).[22]

Shroder also moves to dismiss claim six on the ground that California does not recognize unjust enrichment as an independent cause of action.[23] Claim six incorporates the allegations in paragraphs 1–34 and 35–80 and further alleges that the defendant "received the value of Mackenzie's labor, services, and efforts during the Parties' relationship and yet he has kept title" (¶ 82) and that he "unjustly and wrongfully retained the benefit of [the plaintiff's] money" (¶ 83).[24]

---

[19] *Id.* at 22 (¶ 54).

[20] *Id.* at 24 (¶ 66).

[21] *Id.* at 27–28 (¶ 87).

[22] *Id.* at 34–35 (¶ 120).

[23] Notice of Mot. – ECF No. 17 at 2.

[24] Compl. – ECF No. 1 at 26 (¶¶ 82–83).

United States District Court
Northern District of California

The court has diversity jurisdiction. 28 U.S.C. § 1332.[25] The parties consented to magistrate-judge jurisdiction. 28 U.S.C. § 636(c)(1).[26] The court held a hearing on August 13, 2026.

## MOTION TO STRIKE

### 1. Legal Standard

California's anti-SLAPP statute allows a defendant to obtain early dismissal of claims that are designed primarily to chill the exercise of First Amendment rights. *Siam v. Kizilbash*, 130 Cal. App. 4th 1563, 1568 (2005). Section 425.16(b)(1) provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that there is a probability that the plaintiff will prevail on the claim.

Section 425.16(e) provides that acts "in furtherance of" these rights include:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law;
>
> (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law;
>
> (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; or
>
> (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

California's anti-SLAPP statute applies to state claims in federal court. *Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1206–07 (9th Cir. 2005). In ruling on an anti-SLAPP motion, the trial court engages in a two-step process. *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002). First, the court decides whether the defendant has made a threshold showing that the challenged cause of action arises from acts in furtherance of the defendant's right of petition or free speech under the United States or California constitutions in connection with a public issue. *Id.* Second,

[25] Notice of Removal – ECF No. 1.

[26] Consents – ECF Nos. 13, 16.

"[i]f the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." *Id.* The claim is subject to dismissal only when the defendant shows that the claim is based on protected conduct and the plaintiff fails to show a probability of success on that claim. *Navellier v. Sletten*, 29 Cal. 4th 82, 88–89 (2002).

For the first part of the test, a defendant must make a prima facie showing that the claim "aris[es] from" its conduct "in furtherance of" its exercise of free speech or petition rights as defined in § 425.16(e). *Equilon*, 29 Cal. 4th at 67. "For purposes of the anti-SLAPP statute, a cause of action 'arises from' conduct that it is 'based on.'" *Graham-Sult v. Clainos*, 756 F.3d 724, 735 (9th Cir. 2013) (citing *Copenbarger v. Morris Cerullo World Evangelism*, 215 Cal. App. 4th 1237, 1244–45 (2013)). Thus, a court must ask what activities form the basis for each cause of action. *Id.* The court then must ask whether those activities are "protected" and thereby bring the cause of action within the scope of the anti-SLAPP statute. *Id.* (citing *Wallace v. McCubbin*, 196 Cal. App. 4th 1169, 1182–84 (2011)).

For the second part of the test, the burden shifts to the plaintiff to establish as a matter of law that no such protection exists. *Governor Gray Davis Comm. v. Am. Taxpayers Alliance*, 102 Cal. App. 4th 449, 456 (2002). To establish a probability of prevailing, a plaintiff must demonstrate that the complaint is legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited. *Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guar. Ass'n*, 136 Cal. App. 4th 464, 476 (2006). The plaintiff also must present evidence to overcome any privilege or defense to the claim that has been raised. *Flatley v. Mauro*, 39 Cal. 4th 299, 323 (2006).

In any action subject to the anti-SLAPP statute, "a prevailing defendant on a special motion to strike shall be entitled to recover that defendant's attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c); *Verizon Delaware v. Covad Commc'ns*, 377 F.3d 1081, 1091 (9th Cir. 2004).

California Civil Code § 47(b) privileges communications "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action," and the privilege applies to all torts except malicious prosecution, regardless of malice or motive.

United States District Court
Northern District of California

*Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990); *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057–58 (2006). The privilege reaches non-tort claims, including contract claims, when its application "furthers the policies underlying the privilege." *Wentland v. Wass*, 126 Cal. App. 4th 1484, 1492 (2005); *accord Vivian v. Labrucherie*, 214 Cal. App. 4th 267, 276 (2013).

**2. Analysis**

**2.1 Step One: the Unlawful-Detainer Action is Protected Petitioning Activity**

The first step of anti-SLAPP analysis considers whether each challenged claim rests on protected activity and forms a basis for liability in the complaint. *Bonni v. St. Joseph Health Sys.*, 11 Cal. 5th 995, 1012 (2021).

California's anti-SLAPP statute protects "any written or oral statement or writing made before" or "in connection with an issue under consideration or review by" a judicial body. Cal. Civ. Proc. Code § 425.16(e)(1)–(2). Filing, serving, and prosecuting an unlawful-detainer action is protected petitioning activity under § 425.16. *Birkner v. Lam*, 156 Cal. App. 4th 275, 281 (2007); *accord Feldman v. 1100 Park Lane Assocs., Inc.*, 160 Cal. App. 4th 1467, 1479 (2008); *Newport Harbor Offices & Marina, LLC v. Morris Cerullo World Evangelism*, 23 Cal. App. 5th 28, 45 (2018).

The inquiry at step one thus is whether the challenged claims "arise from" the unlawful-detainer action. *Bonni*, 11 Cal. 5th 995 at 1009. There are two categories of claims: contract claims and tort claims.[27]

**2.1.1 The Contract Claims (Claims One Through Three)**

The three contract claims are breach of pooling agreement (claim one), breach of an express oral contract (claim two), and breach of an implied contract (claim three). Each alleges a breach or repudiation by Shroder's service of the unlawful-detainer action on Fotsch.[28] These alleged

[27] Shroder does not move to strike the unjust-enrichment claim, instead moving to dismiss it only on the ground that it is not a cognizable standalone claim. *See infra*. The claim in any event is not predicated on service of the unlawful-detainer action or other protected conduct. *See supra* Statement.

[28] *See supra* Statement (excerpting Compl. – ECF No. 1 at 20 (¶ 45), 22 (¶ 54), 24 (¶ 66).

United States District Court
Northern District of California

breaches arise from protected petitioning activity: service of the unlawful-detainer action. *Id.*; *Birkner*, 156 Cal. App. at 281.

Fotsch nonetheless contends that Shroder's unlawful-detainer action is not the basis for the claims but instead is "merely a manifestation of Defendant's breach" and "at most, additional evidence that repudiation occurred."[29] This argument does not persuade: paragraphs 45, 54, and 66 plead breach of the agreements by service of the action. Fotsch alleges damages from that breach. The unlawful-detainer action itself is a "basis for liability" for breach of contract, which requires an analysis under step two, below. *Park v. Bd. of Trs. of Cal. State Univ.*, 2 Cal. 5th 1057, 1063 (2017). Her authorities do not change this analysis: the claims there were based on a landlord's decision to terminate a tenancy or raise rent. *Ulkarim v. Westfield LLC*, 227 Cal. App. 4th 1266, 1275–76, 1279 (2014); *Clark v. Mazgani*, 170 Cal. App. 4th 1281, 1284, 1286–1287 (2009); *Oviedo v. Windsor Twelve Props., LLC,* 212 Cal. App. 4th 97, 110 (2012). Here, by contrast, the litigation act (the service of the unlawful-detainer action) is pleaded as the wrong. The unit of analysis is "each act or set of acts supplying a basis for relief," not the cause of action as a whole. *Bonni*, 11 Cal. 5th at 1010; *Baral v. Schnitt*, 1 Cal. 5th 376, 393–95 (2016). The breach-by-service allegations qualify as protected acts, and liability is predicated on them.

The breach-of-contract claims are also predicated on activity other than service of the unlawful-detainer action.[30] At step one, that "unprotected activity is disregarded." *Baral*, 1 Cal. 5th at 396; *Bonni*, 11 Cal. 5th at 1010. The motion does not address the sufficiency of the claims otherwise, and they thus are unaffected by this order.

#### 2.1.2 The Tort Claims (Claims Seven and Eleven)

Claim seven for breach of fiduciary duty alleges five breaches. None mention the unlawful-detainer action. Shroder contends that two breaches alleged in paragraph 87 — treating the parties' joint property as his separate property and refusing to allow Fotsch to exercise her management rights over the property — "constitute the filing and service of an unlawful detainer by alternate

---

[29] Opp'n – ECF No. 22 at 7, 20.

[30] *Id.* at 14–15.

United States District Court
Northern District of California

description."[31] They do not. Asserting exclusive ownership and control of the property and excluding a co-owner from its management describes conduct (both ongoing and preceding the lawsuit) that requires no petitioning at all. *Bonni*, 11 Cal. 5th at 1014; *Park*, 2 Cal. 5th at 1060 ("a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of"). Step one is satisfied for claim seven only insofar as it incorporates by reference earlier paragraphs that premise liability on service of the unlawful-detainer action.

Claim eleven for conversion is a single paragraph that alleges three acts by Shroder: (1) the "service of a Summons and Complaint for unlawful detainer" on March 13, 2026; (2) his "exercise of affirmative control over the . . . real property, to the exclusion of Mackenzie"; and (3) his denial of Fotsch's "reasonable requests to account for said funds and property."[32] The first is protected petitioning. The second and third are not: control over real property and a refusal to account are noncommunicative conduct, not statements in a judicial proceeding. *Rusheen*, 37 Cal. 4th at 1058.

**2.2 Step Two: the Litigation Privilege**

Filing an unlawful-detainer action and serving its summons are communications made in judicial proceedings, by a litigant, to achieve the objects of the litigation. *Silberg*, 50 Cal. 3d at 212. "[N]o communication [] is more clearly protected by the litigation privilege than the filing of a legal action." *Action Apartment Ass'n v. City of Santa Monica*, 41 Cal. 4th 1232, 1249 (2007).

To the extent that the tort claims predicate liability and damages on filing, serving, or prosecuting the unlawful-detainer action, the allegations are stricken. *Williams & Cochrane, LLP v. Rosette*, 631 F. Supp. 3d 884, 906 (S.D. Cal. Sep. 27, 2022) (litigation privilege applies to breach-of-fiduciary actions), *aff'd*, No. 23-55166, 2024 WL 1651666 (9th Cir. Apr. 17, 2024); *Geib v. R.M. Graham Enters., Inc.*, No. 09-CV-2390-H WMC, 2010 WL 11508764, at *3 (S.D. Cal. Mar. 2, 2010) (conversion claim barred when the basis for the claim "arises from [the] filing, prosecuting, and enforcing a legal action"). Fotsch's authorities confirm that the litigation privilege does not apply to "independent, noncommunicative, wrongful act[s]." *Optional Cap. Inc. v. DAS Corp.*, 222

[31] Mot. – ECF No. 17-1 at 13–14 (citing Compl. – ECF No. 1 at 28 (¶ 87(d)–(e))).

[32] Compl. – ECF No. 1 at 34–35 (¶ 120).

United States District Court
Northern District of California

Cal. App. 4th 1388, 1405 (2014). But the challenged allegations here predicate liability on the filing and service of the unlawful-detainer action, which are communicative acts. *Apartment Ass'n*, 41 Cal. 4th at 1249. *Graham-Sult* is consistent: the Ninth Circuit held that the litigation privilege barred a breach-of-fiduciary-duty claim insofar as it rested on statements made to the probate court, and it remanded only as to "activities that the litigation privilege does not protect." 756 F.3d at 746–47. That principle governs here: the allegations that predicate liability on the filing and service of the unlawful-detainer action (¶¶ 45, 54, 66, and the first clause in ¶ 120) are struck, and otherwise, the claims are based on unprotected activities not challenged in the motion.

The answer for the contract claims is the same. The privilege "is generally described as one that precludes liability in tort, not liability for breach of contract." *Navellier v. Sletten*, 106 Cal. App. 4th 763, 773 (2003). But it applies to a breach-of-contract claim when doing so "furthers the policies underlying the privilege." *Wentland*, 126 Cal. App. 4th at 1492. "The principal purpose of the litigation privilege is to afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Id.* (cleaned up). The stricken allegations would impose contract damages for filing and serving the unlawful-detainer action, a direct toll on petitioning. *Feldman* held exactly that: the litigation privilege barred a contract claim that was based on the defendant's "threatening and initiating" an unlawful-detainer action over a subtenancy, allegedly in breach of the parties' lease agreement. 160 Cal. App. 4th at 1497–98.

Fotsch distinguishes *Feldman* on the ground that the breach there was "threatening and initiating" the unlawful-detainer action.[33] But that is what she pleaded in paragraphs 45, 54, 66, and 120: initiating and serving the unlawful-detainer action. *Wentland* does change the outcome either. The court there did not apply the privilege to a contract claim because the breach involved a promise that regulated litigation conduct: a confidentiality term in the parties' settlement agreement. Enforcing the promise vindicated, rather than penalized, the parties' bargain. 126 Cal. App. 4th at

[33] Opp'n – ECF No. 22 at 19–20.

1493–94. The alleged pooling agreement contains no term restraining access to the courts (such as a promise not to sue). Applying the privilege here furthers its policies.

Because the privilege is absolute, Fotsch cannot show even "minimal merit" on the claims that seek a remedy for the unlawful-detainer action, and no amendment can cure that defect. *Baral*, 1 Cal. 5th at 385. Her remedy is to defeat the unlawful-detainer action in state court, not challenge it here. But her remedy for the allegedly broken promises otherwise survives through her claims.

**2.3 Remedy: the Allegations Are Stricken, Not the Claims**

Shroder asks the court to strike the six challenged claims "completely" and let Fotsch replead them, an approach he calls "easier for the Court and better for Fotsch."[34] That is not the remedy that the statute authorizes. *Baral*'s central holding is that an anti-SLAPP motion, "like a conventional motion to strike, may be used to attack parts of a count as pleaded," and, correspondingly, that unprotected allegations in the same count are disregarded and unaffected. *Id.* at 393, 396. When protected and unprotected allegations are in a claim, the court strikes the former and leaves the latter alone. It does not strike the entire claim and restart the pleadings.[35] *Bonni*, 11 Cal. 5th 995 at 1010. The court therefore strikes only the following allegations: (1) from claim one, the allegation that Shroder breached the pooling agreement "when he served Mackenzie with a Summons and Complaint for unlawful detainer" (¶ 45); (2) from claim two, the allegation that Shroder breached the parties' express oral agreements "by serving Mackenzie with an unlawful detainer Summons and Complaint" (¶ 54); (3) from claim three, the allegation that he denied and repudiated the parties' implied agreements "when [he] served Mackenzie with an unlawful detainer action" (¶ 66); (4) from claim seven, any basis for liability predicated on the filing, service, or prosecution of the unlawful-detainer action (including through the incorporation of ¶¶ 45, 54, and 66) (the breaches in ¶ 87 are not stricken); and (5) from claim eleven, the allegation that Shroder converted Fotsch's

[34] Reply – ECF No. 24 at 8–9 (conceding this point); *see also* Mot. – ECF No. 17-1 at 22.

[35] Reply – ECF No. 24 at 8 (citing *Bonni*).

United States District Court
Northern District of California

property "by his service of a Summons and Complaint for unlawful detainer" (the first clause in ¶ 120) (the exclusion-and-control and accounting-denial allegations are not stricken).[36]

The remaining references to the unlawful-detainer action (the narrative allegations in ¶¶ 29 and 34) assert no claim for relief and are not stricken. *Baral*, 1 Cal. 5th at 394. The litigation privilege limits liability, not admissibility, which means that the filings may be admissible as evidence (of repudiation, for example) if permitted by the evidence rules even if they are not a basis for liability. *Oren Royal Oaks Venture v. Greenberg, Barnhard, Weiss & Karma, Inc.*, 42 Cal. 3d 1157, 1168 (1986).

**3. Fees**

A party who prevails on a special motion to strike "shall be entitled to recover" its attorney's fees and costs, Cal. Civ. Proc. Code § 425.16(c)(1), and that entitlement applies in federal court. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833–34 (9th Cir. 2018). A party that prevails in part may recover the fees attributable to the successful portions of the motion, subject to the court's assessment of the practical significance of the results obtained. *Mann v. Quality Old Time Serv., Inc.*, 139 Cal. App. 4th 328, 340, 344–45 (2006). Shroder prevailed on some (but not all) of the challenged allegations. That said, the allegations are stricken only to the extent that they are grounds for liability. Whatever fees motion might be filed is limited to the successful portions of the motion. The timing of the fees motion must be addressed in the parties' initial case-management-conference statement.

Fotsch's cross-request for fees is denied. A plaintiff may recover fees only if the special motion "is frivolous or is solely intended to cause unnecessary delay," that is, if any reasonable attorney would agree the motion is totally devoid of merit. Cal. Civ. Proc. Code § 425.16(c)(1); *Workman v. Colichman*, 33 Cal. App. 5th 1039, 1056–58 (2019). The motion does not meet that standard; it was supported by controlling authority and succeeded at least in part.

[36] Compl. – ECF No. 1 at 20 (¶ 45), 22 (¶ 54), 24 (¶ 66), 34–35 (¶ 120).

United States District Court
Northern District of California

## MOTION TO DISMISS

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of (1) what the claims are and (2) the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016).

Shroder moved to dismiss claim six for unjust enrichment on the ground that there is no standalone claim in California for unjust enrichment.[37] California does not recognize unjust enrichment as a stand-alone claim and instead views it as a prayer for restitution. *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 132 (N.D. Cal. 2020). But the Ninth Circuit has held that when a plaintiff pleads unjust enrichment, the court may construe the cause of action as a quasi-contract claim seeking restitution. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). So construed, claim six states a claim: it alleges that Fotsch conferred money ($142,555.23) for capital improvements, repairs, and property taxes and over a year of project-management and development services related to the property at Shroder's request and in reliance on his promises, and that he retained those benefits while denying her the promised ownership interest.[38] The motion is denied.

---

[37] Mot. – ECF No. 17-1 at 8 & n.1, 21.

[38] Compl. – ECF No. 1 at 12–14 (¶¶ 19, 21–22), 16 (¶¶ 30–31), 25–27 (¶¶ 70–71, 77–78, 81–84); Opp'n – ECF No. 22 at 25–27.

## CONCLUSION

The motion to strike is granted in part: paragraphs 45, 54, 66, and 120 (the first clause only) are stricken to the extent set forth above. The motion to dismiss is denied. The timing of any fees motion must be addressed in the parties' initial case-management-conference statement.

This resolves ECF No. 17.

**IT IS SO ORDERED.**

Dated: August 13, 2026



LAUREL BEELER
United States Magistrate Judge